**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARMEN SOUTHWARD, et al.,<br><br>    Plaintiffs<br><br>v.<br><br>ELIZABETH BOARD OF EDUCATION, et al.,<br><br>    Defendants. | **Civil Action No. 15-3699 (ES) (JAD)**<br><br><br>**OPINION ON PLAINTIFFS' MOTION TO DISQUALIFY DEFENSE COUNSEL** |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court upon Plaintiffs' Motion to Disqualify Counsel. (ECF No. 14). Pursuant to Federal Rule of Civil Procedure 78, the Court did not hear oral argument on this issue. After having carefully considered the parties' submissions, and for the reasons stated below, Plaintiffs' Motion is **DENIED**.

## I.    RELEVANT BACKGROUND

Plaintiffs Carmen Southward and Kristin Kulick, former employees of Defendant Elizabeth Board of Education (the "Board"), commenced this action on June 2, 2015, alleging that Defendants took various adverse employment actions against them in retaliation for Plaintiff Southward's whistleblowing activities and both Plaintiffs' refusal to fully support the individual Defendants' political agendas. (See generally Compl., ECF No. 1). Defendants have filed a motion to dismiss nearly all of Plaintiffs' Complaint (i.e., all claims other than Plaintiff Southward's claim against the Board for unlawful retaliation in violation of the New Jersey

Conscientious Employee Protection Act). (ECF No. 6). That motion is currently pending before the Hon. Esther Salas, U.S.D.J.

On October 20, 2015, Plaintiffs filed a motion requesting that the Court disqualify Defendants' counsel from participating in this action. (ECF No. 14). Specifically, Plaintiffs argue that, as defense counsel previously represented Plaintiff Carmen Southward in various actions, counsel's role in this case, in which they are materially adverse to Ms. Southward's interests, runs afoul of Rule of Professional Conduct 1.9(a). (See generally Pl. Br., ECF No. 14-1). Plaintiffs' motion is now fully briefed, (ECF Nos. 15, 19), and ripe for resolution.

## II.    LEGAL DISCUSSION

### a.    Disqualification - Generally

The United States Court of Appeals for the Third Circuit has noted that "disqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case." United States v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980). The Court of Appeals cautioned, however, that disqualification is "never . . . automatic." Id. To that end, a "court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." Id. In conducting its analysis, a court should consider "the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." Id. Courts must also remain mindful that resolving a motion for disqualification requires a careful balancing of competing interests, "'weighing the need to maintain the highest standards of the profession against a client's right freely to choose his counsel.'" See United States ex rel. Bahsen v. Boston

2

Sci. Neuromodulation Corp., No. 11-1210 (MCA), 2015 U.S. Dist. LEXIS 160030 (D.N.J. Nov. 30, 2015) (quoting City of Atl. City v. Trupos, 201 N.J. 447, 992 A.2d 762, 771 (N.J. 2010)).

In this District, the Rules of Professional Conduct ("RPC") govern the actions of counsel. Local Civil Rule 103.1(a) provides, in pertinent part, that "[t]he Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in the [District]." New Jersey state courts are therefore regarded as a "primary authority" on the interpretation and application of the RPCs. Strategic Envtl. Partners, LLC v. Bucco, No. 13-5032, 2014 U.S. Dist. LEXIS 159483, *5-6 (D.N.J. Nov. 12, 2014) (citing Steel v. GMC, 912 F. Supp. 724, 732 (D.N.J. 1995)). Local Civil Rule 103.1(a) also specifies, however, that both the RPCs and the New Jersey Supreme Court's construction of those Rules must be "modif[ied] as may be required or permitted by Federal statute, regulation, court rule or decision of law." No party contends that such a modification would be necessary or appropriate in this case. (See generally Pl. Br., ECF No. 14; Def. Br., ECF No. 15; Pl. Reply Br., ECF No. 19).

Under New Jersey law, "[d]isqualification of counsel is a harsh discretionary remedy which must be used sparingly." Cavallaro v. Jamco Prop. Mgmt., 760 A.2d 353, 361 (N.J. Super. Ct. App. Div. 2000). Thus, the party seeking disqualification bears the burden of establishing that disqualification would be appropriate. Id. Moreover, motions to disqualify are "viewed with 'disfavor' and disqualification is considered a 'drastic measure, which courts should hesitate to impose except when absolutely necessary.'" Alexander v. Primerica Holdings, Inc., 822 F.Supp. 1099, 1114 (D.N.J. 1993) (quoting Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir. 1983)).

**b.      Plaintiffs Have Not Established that Defense
          Counsel's Involvement in this Case Violates RPC 1.9**

Plaintiffs contend that, by virtue of its previous representation of Plaintiff Carmen

Southward, the law firm of Adams, Gutierrez & Lattiboudere, LLC ("AGL") is violating RPC

1.9(a) by serving as defense counsel in this matter.  (See Pl. Br. at 5-6, ECF No. 14).[1]  The Court

must therefore examine the requirements of that Rule in light of the circumstances of this case.

RPC 1.9(a) provides: "A lawyer who has represented a client in a matter shall not thereafter

represent another client in the same or a substantially related matter in which that client's interests

are materially adverse to the interests of the former client unless the former client gives informed

consent confirmed in writing."  On its face, that Rule requires to Court to determine:  (1) whether

the lawyer previously represented a client; (2) whether that lawyer now represents a different client

in the same matter or a "substantially related" matter; (3) whether the new client's interests are

"materially adverse" to the interests of the former client; and (4) whether the former client has

knowingly consented, in writing, to the lawyer representing the new client.

In Trupos, the New Jersey Supreme Court noted that the burden of production will shift

during adjudication of a motion to disqualify counsel for violation of RPC 1.9(a).  First, the Trupos

Court noted that "the initial burden of production – that the lawyers for whom disqualification is

sought formerly represented their present adverse party and that the present litigation is materially

adverse to the former party – must be borne by the party seeking disqualification."  992 A.2d at

771.  "If that burden of production or of going-forward is met, the burden shifts to the attorneys

---

[1] Plaintiffs also argue that "Karen Murray, Esq., a former Board attorney and witness in this matter
also has conflicts with AGL's representation of Defendants."  (Pl. Br. at 2, ECF No. 14-1).
Plaintiffs do not, however, provide any legal basis for disqualification based on AGL's past
relationship with Ms. Murray.  (See generally id.; Pl's. Reply Br., ECF No. 19).  Plaintiffs have
not, therefore, properly put this issue before the Court and the Court declines to address it further.

sought to be disqualified to demonstrate that the matter or matters in which . . . they represented the former client are not the same or substantially related to the controversy in which the disqualification motion is brought." Id.  The Trupos Court was careful to clarify, however, that notwithstanding that shifting burden of production, "the burden of persuasion on all elements under RPC 1.9(a) remains with the moving party, as it 'bears the burden of proving that disqualification is justified.'" Id. (internal citation omitted).

Plaintiff Southward has met her initial burden of production.  First, she certifies that AGL represented her in several different cases pending in the Superior Court of the State of New Jersey in which she was sued in her capacity as Supervisor of Human Resources for the Elizabeth Board of Education:  (1) Nufrio v Elizabeth Bd. of Ed., et al., Docket No. UNN-L-2832-11; (2) Matlosz v. Elizabeth Bd. of Ed., et al., Docket No. UNN-L-2833-11; (3) Alt v. Elizabeth Bd. of Ed., et al., Docket No UNN-L-2834-11; and (4) Mack v. Elizabeth Bd. of Ed., Docket No. UNN—L-2336-13.  (Cert. of Carmen Southward ¶¶ 4-7, 15, ECF No. 14-5).[2]  The AGL firm does not dispute this. Indeed, in his Certification, Perry L. Lattiboudere, Esq., a partner at the AGL firm, confirmed that the Elizabeth Board of Education's insurance carrier retained AGL to represent the various Board employees sued in the Nufrio/Matlosz/Alt actions, (ECF No. 15-1, ¶ 4), and that the AGL firm entered an appearance on behalf of Ms. Southward in those consolidated cases.  (Id. ¶12).  Mr. Lattiboudere also certified that, when the plaintiff in the Mack action named Ms. Southward as a defendant in that case, the Board's insurance carrier arranged for the AGL firm to represent her, and communicated that fact to Ms. Southward.  (Id. ¶ 24).  While AGL strongly suggests that its relationship with Ms. Southward was superficial, and that the firm had little direct contact with

---

[2] The Nufrio, Matlosz, and Alt cases were subsequently consolidated.  (Cert. of Carmen Southward ¶ 8, ECF No. 14-5).

her, (see generally Certification, Perry L. Lattiboudere, Esq., ECF No. 15-1), this Court finds that

the relationship was such that the AGL firm previously "represented" Ms. Southward for the

purposes of RPC 1.9(a). Moreover, this is no question that Defendants' interests in the current

matter are "materially adverse" to Ms. Southward's. Finally, nothing in the record suggests that

Ms. Southward gave her written consent to AGL's participation in this case. Indeed, Ms.

Southward has expressly stated that she refuses to waive any potential conflict. (Cert. of Carmen

Southward ¶ 16, ECF No. 14-5). Plaintiffs have therefore met their initial burden of production

on this motion.

The resolution of Plaintiffs' motion will therefore turn on whether this case is "the same or

substantially related" to the matters in which AGL previously represented Plaintiff Southward. In

Trupos, the New Jersey Supreme Court considered various jurisdictions' interpretations of RPC

1.9(a)'s "substantially related" language, 992 A.2d at 773-74, and "distil[led]" those approaches

to create the following "workable standard":

> [F]or purposes of RPC 1.9, matters are deemed to be "substantially
> related" if (1) the lawyer for whom disqualification is sought
> received confidential information from the former client that can be
> used against that client in the subsequent representation of parties
> adverse to the former client, or (2) facts relevant to the prior
> representation are both relevant and material to the subsequent
> representation.

Id. at 774. [3] In describing the rationale behind its formulation, the Trupos Court wrote "[w]e adopt

that standard because it protects otherwise privileged communications, see RPC 1.6(a)

(proscribing revelation of 'information relating to representation of a client;), while also requiring

a fact-sensitive analysis to ensure that the congruity of facts, and not merely similar legal theories,

---

[3] The parties agree that the New Jersey Supreme Court's decision in Trupos provides the
applicable standard for resolving this issue. (Compare Pl. Br. at 7-10, ECF No. 14-1 with Def.
Br. at 14-15).

governs whether an attorney ethically may act adverse to a former client." Id. (citation in original).

As noted above, AGL bears the burden of production in demonstrating "that the matter or matters in which . . . they represented [Ms. Southward] are not the same or substantially related to the controversy in which the disqualification motion is brought." Trupos, 992 A.2d 771. This Court finds that AGL has done so, and will address both prongs of the Trupos Court's "substantially related" test in turn, albeit in reverse order.

First, this matter is "substantially related" to the Nufrio/Matlosz/Alt and Mack cases if "facts relevant to the prior representation are both relevant and material to the subsequent representation." Id. at 774. In meeting its initial burden of production on this point, AGL has provided a certification demonstrating the stark differences between this matter and the previous cases. For instance, in this case, Plaintiffs allege that: (1) Defendants violated the New Jersey Conscientious Employee Protection Act by retaliating against Plaintiff Southward in response to her various "whistleblowing" activities; (Compl. ¶¶ 19-49); (2) Defendants violated both Plaintiffs' First and Fourteenth Amendment rights, as well as the New Jersey Civil Rights Act, by taking adverse employment actions against them based on their disagreement with / refusal to adequately promote Defendants' political agendas; (id. ¶¶ 50-99); (3) Defendants' treatment of Plaintiffs violated both New Jersey statutory law and the Board of Education's own policies; (id. ¶¶ 100-105); and (4) Defendants' actions constitute a violation of both the federal and New Jersey RICO statutes. (Id. ¶¶ 106-127).

In contrast, attorney Perry Lattiboudere of the AGL firm has certified that the Nufrio/Matlosz/Alt matters involved claims that the Board of Education wrongfully selected each of the plaintiffs, three tenured vice principals, for layoffs "because of his age, race, ethnicity or disability, or because of his status as a union officer." (Certification, Perry L. Lattiboudere, Esq.

7

¶ 2, ECF No. 15-1).  Mr. Lattiboudere has further certified that, in the <u>Mack</u> case, a former lunch

aide alleged that certain defendants unlawfully selected her for layoff "based on her race and

ethnicity, because of her status as a union member, or because she had filed workers' compensation

claim."  (<u>Id.</u> ¶ 34).  In their reply submission, Plaintiffs argue that the <u>Nufrio/Matlosz/Alt</u> and

<u>Mack</u> matters are "substantially related" to this case for purposes of RPC 1.9(a) in that each of the

cases involves similar causes of action and general factual allegations.  (Pl. Reply Br. at 7-8, ECF

No. 19).  The Court notes, however, that under <u>Trupos</u>, the Court must conduct a "fact-sensitive

analysis to ensure that the congruity of facts, and not merely similar legal theories, governs whether

an attorney may act adverse to a former client."  <u>Trupos</u>, 992 A.2d 774.  The Court has reviewed

the complaints filed in the <u>Nufrio/Matlosz/Alt</u> and <u>Mack</u> cases, (ECF No. 15-2 at 2-77; ECF No.

15-3 at 82-93), and finds that there is simply no "congruity of facts" linking those cases with the

present action.  Nothing in the <u>Nufrio/Matlosz/Alt</u> or <u>Mack</u> cases involves actions that Defendants

took or failed to take with regard to Plaintiffs Southward or Kulick.  Likewise, the present case

does not concern any actions that the Board or its employees took with regard to the plaintiffs in

<u>Nufrio/Matlosz/Alt</u> or <u>Mack</u>.  The cases are only "similar" in that they each involve allegations of

wrongful, adverse employment actions and, in some instances, like legal theories.  The Court finds

that Plaintiffs have failed to carry their ultimate burden of establishing that this matter has a

"congruity of facts" with the <u>Nufrio/Matlosz/Alt</u> or <u>Mack</u> cases.  The Court must therefore move

on to the <u>Trupos</u> Court's alternative basis for determining whether the cases are "substantially

related."

   Under <u>Trupos</u>, this matter must also be deemed "substantially related' to the

<u>Nufrio/Matlosz/Alt</u> and <u>Mack</u> actions if, while representing Ms. Southward in those cases, AGL

"received confidential information from [Ms. Southward] that can be used against [Ms.

Southward] in [this case]." Id. at 774. The Court finds that AGL has satisfied its "burden of production" on this point, as it appears from the Certification of AGL partner Perry L. Lattiboudere that AGL had no substantive discussions with Plaintiff Southward regarding the Nufrio/Matlosz/Alt or Mack actions, (see generally ECF No. 15-1), and that "nothing in the documents [AGL] obtained from the Board . . . implicated Southward in any way." (Id. ¶ 21). Citing generally to Plaintiff Southward's Certification, Plaintiffs, who bear the ultimate burden of persuasion on this motion, argue that "confidential information was relayed to AGL in their representation of Ms. Southward. Documents from Ms. Southward and records kept by her were removed from her office for the case." (Pl. Br. at 8, ECF No. 14-1). The Court finds that Ms. Southward's Certification does not support that statement. Rather, Ms. Southward certified: "It is my understanding that many documents were provided to counsel in connection with these matters. I am concerned that those documents contain privileged information about me." (ECF No. 14-5 ¶ 9). Similarly, Plaintiffs argue that Karen Murray, a former Board attorney, "conveyed confidential information regarding herself and the other defendants, including Ms. Southward to AGL." (Pl. Br. at 9, ECF No. 14-1) The only potentially relevant portion of Ms. Murray's Certification, however, makes no mention of Plaintiff Southward, instead stating that she provided AGL with "information related to representing the Board, myself, and other employees." (Cert. of Karen Murray ¶ 8, ECF No. 14-6). In short, nothing in the record supports the idea that AGL actually received confidential information regarding Plaintiff Southward. Plaintiffs argue that it would be reasonable to assume that AGL received such confidential information. (Pl. Br. at 9, ECF No. 14-1). The Court will not, however, rely on an unsupported assumption as a basis for depriving Defendants of their chosen counsel. See Trupos, 992 A.2d at 775 ("[T]here is no proof of any settlement tactics or strategy being shared with the law firm and, because the 'appearance

of impropriety' standard no long has any vibrancy when gauging the propriety of attorney conduct, surmise alone cannot support an order of disqualification.") (emphasis added); see also Yau v. He Cheng Restaurant Corp., No. 12-6754 (MCA), 2015 U.S. Dist. LEXIS 70793, *18 (D.N.J. June 2, 2015) ("The fact that Plaintiff cannot identify any confidential information imparted to or used by Xue confirms Xue's denial of having received any such information."). Even assuming, for the sake of argument, that AGL did receive some information from or about Ms. Southward in connection with the Nufrio/Matlosz/Alt or Mack actions, nothing in the record before the Court suggests that AGL could utilize that information against Plaintiff Southward in this case. Trupos, 992 A.2d at 775. Indeed, that is particularly unlikely given the fact, as discussed above, that this matter is based on a completely different factual situation than any of the earlier cases.

As the record does not support a finding that the Nufrio/Matlosz/Alt or Mack actions are factually similar to this matter or, alternatively, that AGL received confidential information regarding Plaintiff Southward that it might use against her in this case, the Court finds that this matter is not "substantially related" to the cases in which AGL previously represented Plaintiff Southward. The Court further finds that Plaintiffs have not established that AGL's role in this case runs afoul of RPC 1.9(a). The Court will, therefore, **DENY** Plaintiffs' motion.

## III.   CONCLUSION

Based on the foregoing findings, Plaintiffs' Motion to Disqualify Counsel is **DENIED**. An Order consistent with the terms of this Opinion will follow.


**JOSEPH A. DICKSON, U.S.M.J.**


Cc:  Hon. Esther Salas, U.S.D.J.

10